Jamelle McCLARY, Appellant,

v.

UNITED STATES, Appellee.

No. 07–CF–1154.

District of Columbia Court of Appeals.

Argued April 27, 2010.
Decided Sept. 2, 2010.
Amended Aug. 18, 2011.*

* Amended August 18, 2011, pursuant to the    Order of this date.

Sloan S.J. Johnston, Public Defender Service, with whom James Klein and Jaclyn S. Frankfurt, Public Defender Service, were on the brief, for appellant.

Stratton C. Strand, Assistant United States Attorney, with whom Channing D. Phillips, Acting United States Attorney at the time the brief was filed, Roy W. McLeese III, and Michael T. Truscott, Assistant United States Attorneys, were on the brief, for appellee.

Before WAGNER, KERN and NEBEKER, Senior Judges.

NEBEKER, Senior Judge:

▆▆▆ At trial, the court limited appellant's cross-examination of the victim, Sean Grady, by not allowing inquiry into Grady's potential self-interest bias in favor of the government stemming from his previous juvenile record, his probationary status, as well as his recent arrest just before he testified at trial. The complete denial of cross-examination to explore potential bias is tantamount to a denial of a defendant's Sixth Amendment rights. *See Delaware v. Van Arsdall,* 475 U.S. 673, 679, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986). However, the trial court has discretion to impose reasonable limits on cross-examination that are "repetitive, protracted, or cumulative." *Sherer v. United States,* 470 A.2d 732, 737 (D.C.1983).

▆ This court has found error where a trial court allows cross-examination into one area of potential self interest bias, but denies inquiry into another similar, but distinct and unrelated area of potential bias. *See Blunt v. United States,* 863 A.2d 828, 835 (D.C.2004). "[E]ven where the trial court has allowed counsel to explore at will the potential ulterior motives of a witness, yet refuses one potential[ ] ... area [probative of bias], an error has occurred." *Jenkins v. United States,* 617 A.2d 529, 532 (D.C.1992). "The purpose of this type of cross-examination 'is to attempt to demonstrate that because the witness has a present personal liberty interest ... such as a pending charge or probationary status, the witness may have a motive to curry favor by testifying for the government.'" *Blunt,* 863 A.2d at 835 (quoting *Coligan v. United States,* 434 A.2d 483, 485 (D.C.1981)). In *Blunt,* we rejected the contention that allowing cross-

examination into one area of bias related to currying favor with the government rendered cumulative questions related to other areas of potential self interest bias in favor of the government. *Id.* Instead, we held that even where cross-examination was allowed into the witness's bias based on his involvement with the crime being prosecuted, it was error not to allow inquiry into a witness's additional potential bias to curry favor with the government based on pending charges on another jurisdiction's "stet" docket, which could have been revived at any time. *Id.* at 834.

In this case, cross-examination was allowed into several areas of potential bias related to the witness's potential ulterior motive of currying favor with the government. Appellant cross-examined Grady concerning his immunity agreement, the drug sales he made on the night of the shooting, the absence of charges from those drug sales, as well as his initial refusal to cooperate with the police. However, no cross-examination was allowed into Grady's juvenile cases, his probationary status, and most importantly, his recent arrest prior to testifying at trial for possession of marijuana, which was "no papered," and driving an unregistered vehicle, which was pending when he gave his testimony.

While the trial court does have discretion to limit bias cross-examination in instances where such examination would be cumulative, the trial court went too far in preventing any cross-examination into the independent area of the witness's pre-trial arrest, the no-papering of one of those charges, and the pending status of the other charge. The witness's recent arrest and pending charge create a similar circumstance to that in *Blunt,* and it was error for the trial court not to allow inquiry into these independent areas of potential self interest bias.[1]

■■■ Given that there was constitutional error in this case, the issue remains whether that error is harmless beyond a reasonable doubt. *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).[2] In *Blunt,* we determined that the error could not be harmless beyond a reasonable doubt because cross-examination into an area of potential bias was limited against the only eyewitness to the robbery to identify the defendant pre-trial.[3] *Blunt v. United States,* 863 A.2d 828, 836 (D.C.2004). Here, two other witnesses provided substantial independent identifications, which weigh heavily in the determination whether the error is harmless beyond a reasonable doubt. We review Confrontation Clause violations for harmlessness based on several factors including, " 'the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on

---

**1.** Given this holding we need not address appellant's additional argument that *Davis v. Alaska,* 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974) is also controlling.

**2.** We have repeatedly held that in Confrontation Clause cases the burden is on the government to show "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." *Williams v. United States,* 858 A.2d 978, 981 (D.C.2004) (quoting *Chapman,* 386 U.S. at 24, 87 S.Ct. 824) (internal quotation marks omitted). "Ul-

timately, we must determine 'whether there was a reasonable possibility that [constitutional error] contributed to [appellant's] conviction.' " *Digsby v. United States,* 981 A.2d 598, 604 (D.C.2009) (quoting *Duvall v. United States,* 975 A.2d 839, 843 (D.C.2009)).

**3.** The eyewitness in *Blunt* was present at the robbery and was arrested on that charge, which was later no-papered. During deliberations, the jury in that case disclosed concerns about the witness's bias related to his involvement with the robbery.

material points, the extent of cross-examination otherwise permitted, and ... the overall strength of the prosecution's case.'" *Jones v. United States*, 853 A.2d 146, 153–54 (D.C.2004) (quoting *Van Arsdall*, 475 U.S. at 684, 106 S.Ct. 1431). "To show harmlessness beyond a reasonable doubt, the government must show that (1) appellant would have been convicted without the witness's testimony, or (2) the restricted line of questioning would not have weakened the impact of the witness's testimony." *Jones*, 853 A.2d at 154.

Here, the government has carried its burden by demonstrating that, on the record before us, there was independent and reliable identification testimony, as well as sufficient corroborative testimony to show that the restricted inquiry would "not have weakened the impact" of Grady's testimony. The self-interest bias cross-examination allowed into both Grady's immunity agreement, and the fact that he was not charged for illegal drug sales he conducted on the night that he was shot, also weigh in favor of finding the error was harmless beyond a reasonable doubt. The impact of Grady's testimony could not be substantially dampened by further inquiry into his potential self-interest bias because the truthfulness of his testimony had already been called into question based on similar bias. Furthermore, two other eye witnesses, Hugh Chandler and Rene Paige, substantially corroborated Grady's identification testimony, which strengthens the impact of his testimony.

Unlike in *Blunt*, where no other reliable eyewitness identification testimony was available to bolster the witness's testimony,[4] both Chandler and Paige observed the appellant firing in Grady's direction, and made independent out-of-court identifications of McClary. Chandler watched McClary cross a street toward Grady before the shooting, and saw Grady run toward the school, where he was later found. To be sure, these witnesses appear on the record also to be products of the neighborhood drug and alcohol subculture, but nonetheless their ability to identify McClary leads us to conclude that they add sufficiently to identifying him, which when coupled with the other factors of record permits our holding of harmlessness here. This testimony, as well as the cross-examination that was allowed related to Grady's bias to curry favor with the government, are enough to show that the error was harmless beyond a reasonable doubt. Importantly, and unlike in *Blunt*, it was difficult to dampen the impact of Grady's testimony because that testimony was buttressed by the two other witness's identifications. We are satisfied that further cross-examination into Grady's potential self interest bias would not have lessened the impact of his testimony as the veracity of that testimony was already called into question, and his identification was supported by two independent witnesses. Thus, our holding that the cross examination error was harmless beyond a reasonable doubt is adequately informed by what the record discloses. Accordingly, the convictions are

*Affirmed.*

BEFORE: WASHINGTON, Chief Judge; RUIZ, GLICKMAN, \*\*KRAMER, FISHER, BLACKBURNE–RIGSBY, THOMPSON, and OBERLY, Associate

---

4. In *Blunt* there was another witness who made an in-court identification of Blunt, but her testimony was impeached based on her pre-trial statement to the police that she would not be able to pick Blunt's photo out of an array, and she identified someone else pre-trial.

\*\* Judge Kramer was an Associate Judge of the court at the time of argument. She retired on May 1, 2011.

Judges; ***REID, Associate Judge, Retired; *WAGNER, *KERN, and *NEBEKER, Senior Judges.

## ORDER

PER CURIAM

On consideration of appellant's petition for rehearing or rehearing en banc, and the opposition thereto; and it appearing that the court issued an opinion in *McClary v. United States*, 3 A.3d 346 (D.C. 2010), on September 2, 2010, and on further consideration thereof, of the record on appeal, the petition for rehearing or rehearing en banc, and the opposition thereto, it is

ORDERED by the merits division* that the petition for rehearing is granted solely on the issue of self interest "(Part II) Bias Cross-Examination." That portion of the opinion dealing with the pre-deliberation instruction does not merit rehearing. Thus, the opinion, *supra*, is amended consistent with this order on the issue of self interest bias of the shooting victim, as reflected in the attached opinion on rehearing. Otherwise the 2010 opinion remains as written. It is

FURTHER ORDERED that the petition for rehearing en banc is denied without prejudice to the filing of a new petition for rehearing en banc at the amended opinion.

---

*** Judge Reid was an Associate Judge of the court at the time of argument. Her status changed to Associate Judge, Retired, on April 7, 2011.