Bruce ALSTON, Appellant,

v.

UNITED STATES, Appellee.[1]

Nos. 85–609, 86–2.

District of Columbia Court of Appeals.

Submitted March 24, 1986.

Decided July 3, 1986.

Charles E. Chisholm, Washington, D.C., appointed by the court, was on brief, for appellant.

Joseph E. diGenova, U.S. Atty., Michael W. Farrell, Maria C. Walicki, and Andrew Fois, Asst. U.S. Attys., Washington, D.C., were on brief, for appellee.

Before NEBEKER, MACK and BELSON, Associate Judges.

MACK, Associate Judge:

Alston appeals two convictions of shoplifting, in violation of section 113 of The Theft and White Collar Crimes Act of 1982, D.C. Law 4–164, 29 D.C. Reg. 3976 (1982) (codified at D.C. Code § 22.3801 *et seq.* (1985 Supp.)).[2] On appeal, Alston claims that the evidence was insufficient to support his convictions. In particular he alleges that the government failed to show beyond a reasonable doubt that the complainant-corporations were licensed to do business in the District of Columbia, that the stolen property in question was not property "in the possession of the accused as to which any other person [had] only a security interest", and that the property was owned and offered for sale by the corporations. We affirm.

I

The government charged Alston with shoplifting in two separate and unrelated incidents. At the bench trial[3] the government presented testimony from a security officer employed by Woodward & Lothrop, a Washington, D.C. department store. The security officer testified that after being notified by radio that appellant had taken gloves from the first floor glove counter without paying for them, he began to search the store for appellant. The officer went to the men's department on the second floor. While there, he was called again on his radio, and

1. No. 85–609 was originally decided by our opinion filed May 22, 1986. This opinion follows consideration of a petition for rehearing filed by appellant in No. 85–609, and granted by the division.

2. The Code provides in pertinent part:

(a) A person commits the offense of shoplifting if, with intent to appropriate without complete payment any personal property of another that is offered for sale or with intent to defraud the owner of the value of the property, that person:

(1) Knowingly conceals or takes possession of any such property;

(2) Knowingly removes or alters the price tag, serial number, or other identification mark that is imprinted on or attached to such property; or

(3) Knowingly transfers any such property from the container in which it is displayed or packaged to any other display container or sales package.

D.C.Code § 22–3813(a) (1985 Supp.).

told that appellant had returned to the first floor. The officer then descended to the first floor, where he found appellant. He watched appellant leave the store; as Alston exited, he activated an alarm triggered by tags on the gloves that were concealed in his shoulder bag. Alston was arrested outside the store, then brought to the security office. He was immediately searched, and several pairs of gloves were recovered from the shoulder bag.

Four employees of Garfinckel's, another Washington department store, testified about the second incident. A salesclerk saw appellant take from a first floor counter two boxes, each containing a silver flask. Appellant then walked toward a cash register, but veered sharply away and entered an elevator. The clerk immediately telephoned security personnel. A second salesperson, who noticed appellant enter the elevator with the boxes, went to notify security officers stationed at the employees' entrance. While there, the salesperson saw appellant exit through the door, and pointed him out to an officer. Appellant was apprehended outside the store. Two security officers testified that he had in his duffle bag the two boxes with the price tags still affixed, but no receipt for the merchandise.

The government also introduced copies of the certificates of incorporation of Woodward & Lothrop and Garfinckel's, and a picture of the silver flask.[4]

## II

The Theft and White Collar Crimes Act of 1982 was a comprehensive revision of the former statute dealing with theft and related offenses. The new act includes the first codification in this jurisdiction of the crime of shoplifting. Shoplifting is described by section 22–3813 as an offense against "any personal property of another that is offered for sale." (*See* note 2, *supra*.)

■ Appellant's first insufficiency argument rests on the broad statutory language of another section (22–3801(4)) defining "property of another" as

any property in which a government or a person other than the accused has an interest which the accused is not privileged to interfere with or infringe upon without consent, regardless of whether the accused also has an interest in that property. The term "property of another" includes the property of a corporation or other legal entity established pursuant to an interstate compact. The term "property of another" does not include any property in the possession of the accused as to which any other person has only a security interest.

Appellant argues that this latter provision requires the government to prove that the stolen property is not merchandise in which the only interest held by another is a security interest. On its face this argument is so far-fetched as to be unpersuasive. We can think of no circumstance in which the provision to which appellant refers would be applicable to a case such as this where at the outset of the incident the property was in the possession of another rather than in the possession of the accused.[5] Our conclusion in this regard is buttressed by legislative history.

The final version of the bill that was adopted by the City Council did not contain any definition of "security interest." However, earlier versions [6] provided that security interest was to be given the same defini-

---

**3.** A person convicted of shoplifting pursuant to the 1982 Act may be fined not more than $300, or sentenced to not more than ninety days imprisonment. D.C. Code § 22–3813(b) (1985 Supp.). Therefore, one charged with the offense of shoplifting is not entitled to a trial by jury. D.C. Code § 16–705(b)(1) (1981).

**4.** A photograph of the appellant was taken immediately after his arrest for the first offence. It depicted him with another Woodward & Lothrop security agent and the stolen merchandise. The picture was marked as an exhibit, but not moved into evidence.

**5.** The sentence may well have been included in the definition to preclude the possibility of a person being charged with theft for possessing property that he has purchased under circumstances giving another a security interest in that property.

**6.** *See, e.g.,* Referral of Proposed District of Columbia Theft and White Collar Crimes Act of 1981, Bill 4–133, to the Committee on the Judiciary, February 12, 1981.

tion as that in the Uniform Commercial Code.[7] The Uniform Commercial Code regulates commercial transactions, such as buying and selling, banking, and mortgaging.

With regard to that definition, then Councilmember David A. Clarke explained that "[Property of another] does not, however, extend to property in which the other person has only a security interest. Thus, the ordinary credit transaction is not included in this definition." Extension of Comments on Bill No. 4–133: The District of Columbia Theft and White Collar Crimes Act of 1982, submitted by Councilmember David A. Clarke, at 17 (July 20, 1982). This explanation is the sole reference in the legislative history to that phrase and appears in the definitional section describing the various theft offenses. On the other hand, the term is not mentioned in the discussion on shoplifting. There is no reason to conclude that it was intended to apply in that context—indeed it would subvert the self-evident meaning of the proscription to so apply it. Obviously, then, there was no intention to transform the exception for property in which a security interest is held by another in the definitional section into an element of the offense of shoplifting which must be proved by the government in its case in chief. We therefore may not impose that requirement of proof on the government in shoplifting cases. *See Peoples Drug Stores, Inc. v. District of Columbia*, 470 A.2d 751, 754 (D.C.1983) (statutes construed to effect legislative purpose); *Carey v. Crane Service Co.*, 457 A.2d 1102, 1105 (D.C.1983) (meaning of statutory phrase derived from consideration of entire enactment against backdrop of policy and objectives).

### III

Appellant's final claims—that his conviction must fail because the government failed to prove that the department store was licensed to do business in the District of Columbia and that they owned the merchandise that he stole—merit little discussion. *Carmon v. United States*, 498 A.2d 580 (D.C.1986). The government introduced the certificate of incorporation. *Cf. id.* at 582 (even failure to prove corporate status of merchant not fatal to shoplifting prosecution). Under the shoplifting statute, it is not necessary for the government to prove exactly who the owner of the merchandise is, but only that the owner[8] was someone other than the appellant. *Id.* at 582–83. The testimony of the Woodward & Lothrop security agent that he had been notified by another security officer that appellant had "stolen some gloves and jumped on the elevator,"[9] that he had observed appellant's exit from the store that triggered the alarm, and that the concealed merchandise bore the store's price tags was sufficient for a reasonable trier of fact to conclude that appellant was not the owner of the gloves. Similarly, the testimony of the Garfinckel's personnel was also sufficient for a reasonable trier of fact to conclude that appellant was not the owner of the silver flasks.

*Affirmed.*

---

7. D.C.Code § 28–1:201(37) provides:

"Security interest" means an interest in personal property or fixtures which secures payment or performance of an obligation. The retention or reservation of title by a seller of goods notwithstanding shipment or delivery to the buyer (section 28:2–401) is not a "security interest," but a buyer may also acquire a "security interest" by complying with article 9. Unless a lease or consignment is intended as security, reservation of title thereunder is not a "security interest" but a consignment is in any event subject to the provisions on consignment sales (section 28:2–326). Whether a lease is intended as security is to be determined by the facts of each case; however, (a) the inclusion of an option to purchase does not of itself make the lease one intended for security, and (b) an agreement that upon compliance with the terms of the lease the lessee shall become or has the option to become the owner of the property for no additional consideration or for a nominal consideration does make the lease one intended for security.

8. The owner is the person or entity entitled to exercise dominion and control over the property. *Carmon v. United States, supra,* 498 A.2d at 583.

9. Hearsay evidence admitted without objection may be properly considered by the trier of fact and given its full probative value. *Id.* at 583 n. 5 (citing *Eldridge v. United States,* 492 A.2d 879, 883 (D.C.1985)).