**Linell FREEMAN, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 90–407.**

District of Columbia Court of Appeals.

Argued Nov. 14, 1991.

Decided Dec. 13, 1991.

Peter H. Meyers, Washington, D.C., appointed by this court, for appellant.

William C. Snyder, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., John R. Fisher and Roy W. McLeese, III, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellee.

Before ROGERS, Chief Judge, and TERRY, Associate Judge, and PRYOR, Senior Judge.

ROGERS, Chief Judge:

Appellant Linell Freeman appeals his conviction for assault with a dangerous

weapon, D.C.Code § 22–502 (1989 Repl.), and possession of a firearm during the commission of a crime of violence, *id.* § 22–3204(b) (1991 Supp.), on the ground that the former conviction must be vacated because it merges with the latter conviction. We affirm.

## I.

Appellant pleaded guilty to assault with a dangerous weapon, D.C.Code § 22–502,[1] and possession of a firearm during a crime of violence, D.C.Code § 22–3204(b),[2] arising out of an October 22, 1989 shooting in which he wounded Donald Linder.[3] The trial judge imposed concurrent sentences of three to ten years for assault with a dangerous weapon, and five to fifteen years for possession of a firearm during the commission of a crime of violence, leaving open the issue of merger of offenses. The judge denied appellant's motion to correct his sentence and to vacate his conviction for assault with a deadly weapon on the ground of merger. The judge ruled that the two crimes were not "the same offense, nor is one a lesser included offense of the other," and that under the test in *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), which is codified in D.C.Code § 23–112 (1989 Repl.), "[e]ach offense contains an element which the other offense does not." In addition, the judge concluded that the legislature intended to create the new crime of possession of a firearm during the commission of a crime of violence, and that the statutes under which the offenses arise serve different societal purposes. Appellant's motion

seeking the same relief under D.C.Code § 23–110 was also denied. The judge rejected appellant's argument that assault with a dangerous weapon may not serve as a predicate offense for enhancement under § 22–3204(b) because § 22–3204(b) was not an enhancement provision but "a separate and distinct criminal offense."

## II.

The Double Jeopardy Clause protects against a second prosecution for the same offense after acquittal, a second prosecution for the same offense after conviction, and multiple punishments for the same offense. *North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969). The role of the Double Jeopardy Clause, however, "is limited to assuring that the court does not exceed its legislative authorization by imposing multiple punishments for the same offenses." *Byrd v. United States*, 598 A.2d 386, 388–89 (D.C.1991) (en banc) (quoting *Albernaz v. United States*, 450 U.S. 333, 344, 101 S.Ct. 1137, 1145, 67 L.Ed.2d 275 (1981)); *Waller v. United States*, 531 A.2d 994, 996 (D.C.1987). Where the legislature intends to impose multiple punishments for the same offense, multiple punishments do not violate the Double Jeopardy Clause. *Missouri v. Hunter*, 459 U.S. 359, 368, 103 S.Ct. 673, 679, 74 L.Ed.2d 535 (1983) ("simply because two criminal statutes may be construed to proscribe the same conduct under the *Blockburger* test does not mean that the Double Jeopardy Clause precludes the imposition, in a single trial, of cumulative punishments pursuant to those stat-

---

1. D.C.Code § 22–502 (1989 Repl.) provides that:
 Every person convicted of an assault with intent to commit mayhem, or of an assault with a dangerous weapon, shall be sentenced to imprisonment for not more than 10 years.

2. D.C.Code § 22–3204(b) (1991 Supp.) provides that:
 No person shall within the District of Columbia possess a pistol, machine gun, shotgun, rifle, or any other firearm or imitation firearm while committing a crime of violence or dangerous crime as defined in § 22–3201. Upon conviction of a violation of this subsection, the person may be sentenced to imprisonment for a term not to exceed 15 years and shall be sentenced to imprisonment for a

mandatory-minimum term of not less than 5 years.

3. On October 22, 1989, appellant took a pistol out of his pocket, and fired four shots at Donald Linder. Appellant was charged in a seven count indictment with assault with a dangerous weapon, D.C.Code § 22–502, assault with intent to kill while armed, *id.* §§ 22–501, –3202, two counts of possession of a firearm during the commission of a crime of violence, *id.* § 22–3204(b), carrying a pistol without a license, *id.* § 22–3204(a), possession of an unregistered pistol, *id.* § 6–2311(a), and possession of unregistered ammunition, *id.* § 6–2361(3).

utes."); *see also Albernaz, supra,* 450 U.S. at 343–44, 101 S.Ct. at 1144–45; *Waller, supra,* 531 A.2d at 996. In the absence of clear legislative intent to allow multiple punishments, the *Blockburger* test controls in determining whether offenses merge. *Byrd, supra,* at 389 (citing *Whalen v. United States,* 445 U.S. 684, 691–92, 100 S.Ct. 1432, 1437–38, 63 L.Ed.2d 715 (1980)); *see Simpson v. United States,* 435 U.S. 6, 98 S.Ct. 909, 55 L.Ed.2d 70 (1978).

**A**

In 1989, the Council of the District of Columbia enacted the "Law Enforcement Amendment Act of 1989." D.C. Act 8–120, 37 D.C. Reg. 24 (December 21, 1989). The legislation included an amendment to the Code provision on carrying concealed weapons, D.C.Code § 22–3204, to provide that in addition to prohibiting such carrying, possession of a firearm while committing a crime of violence or dangerous crime would be punishable by a maximum sentence of 15 years and a mandatory minimum sentence of 5 years. According to the Committee Report, the legislation was "to help the District deal with the deadly threat to public safety posed by persons who possess firearms in violation of the laws of the District of Columbia, who commit offenses while armed with or having readily available firearms or imitations thereof...." BILL NO. 8–185, "LAW ENFORCEMENT AMENDMENT ACT OF 1989", REPORT OF THE COMMITTEE ON THE JUDICIARY, COUNCIL OF THE DISTRICT OF COLUMBIA (December 4, 1989) at 3 (Report). The Report states that the legislation would "create[ ] the new offense of *possession of a firearm while committing a crime of violence or dangerous crime,* with an attendant 5 year mandatory minimum sentence." *Id.* As explained by its sponsor, the legislation "will then provide an additional offense of possession of a firearm while committing a crime of violence— or a dangerous weapon. The difference there will be [is] that the gun will not have to be used but can be possessed and be

sufficient to kick in the new statute." Seventh Legislative (Additional) Meeting of the Council of the District of Columbia at 8 (March 7, 1989) (Meeting).

Neither the statute nor the legislative history refer specifically to the question of whether the offense of possession of a pistol while committing a crime of violence merges with the underlying crime of violence. That is, there is no express statement that there would be "multiple punishments for the same offense." *See Robinson v. United States,* 501 A.2d 1273, 1275 (D.C.1985) (when more than one criminal statutory offense arises out of a single course of action, principal question is what punishment the legislature intended to authorize for the offenses). The sponsor of the legislation stated simply that the "Supreme Court of the United States Doctrine of Merger will apply." Meeting at 8. By referring to the Supreme Court, which has invariably applied *Blockburger* as a guide to legislative intent, the statement identifies the body of law through which the legislature wished its intent to be discerned.

Nevertheless, it is clear that the Council intended the amendment to § 22–3204 to create a "new firearm possession offense," which would be violated if an underlying dangerous crime or crime of violence "was committed while possessing a firearm or imitation firearm." Report at 4 (emphasis omitted). Furthermore, in order to accomplish this the Council amended the provision of the Code that prohibited carrying a concealed weapon, D.C.Code § 22–3204 (1989 Repl.). It did not, instead, amend the provision of the Code that simply provided for an additional penalty for committing a crime while armed, D.C.Code § 22–3202 (1989 Repl.).[4] Nor does the legislative history refer to the new provision as creating an enhancement provision. Indeed, the Report refers specifically to the view of the Chief of the Intake Division of the United States Attorney's Office that, according to the Report, the new provision would be "very helpful particularly in circumstances

---

**4.** D.C.Code § 22–3202 (1991 Supp.), provides for additional penalties for committing a crime while armed. It includes discretionary sentenc-

ing provisions as well as a mandatory minimum sentence of 5 years for repeat offenders.

where a firearm was present during the commission of a crime of violence or a dangerous crime, but the firearm was not recovered." Report at 3. The Report noted, moreover, that firearms had "figured prominently" in the increased number of murders and assaults with firearms between January 1, 1988, and January 1, 1989. *Id.* at 2.

Accordingly, we conclude, in view of the nature of the amendment to the Code and the statements in the Report that a new offense is created, that the Council contemplated that multiple punishments would be imposed. But even if the legislative intent was not clear, it is clear that the offenses do not merge.

### B.

■ In *Blockburger, supra,* the Supreme Court described the test for determining whether two offenses merged:

> [W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not.

*Blockburger, supra,* 284 U.S. at 304, 52 S.Ct. at 182. "In applying the *Blockburger* test, a court must compare the 'statutorily-specified elements of the offenses' in question and not 'the facts of the case as alleged in the indictment'" or the evidence presented at trial. *Robinson, supra,* 501 A.2d at 1275 (quoting *United States v. Coachman,* 234 U.S.App.D.C. 194, 202, 727 F.2d 1293, 1301 (1984)); *see also Wilson v. United States,* 528 A.2d 876, 880 (D.C. 1987). Thus, the focus is on "the statutory elements of the two distinct charges; *viz.,* whether each statutory provision required proof of an element that the other did not." *Byrd, supra,* at 390. Here each offense includes an element that the other offense does not.

The elements of assault with a dangerous weapon are: (1) commission of an assault, (2) with a dangerous weapon, and (3) with the intent to do the acts which constituted the assault. *See* Criminal Jury Instructions for the District of Columbia, No. 4.12 (3d ed. 1978). The elements of possession of a firearm during the commission of a crime of violence are: (1) possession of a pistol, machine gun, shotgun, rifle, or other real or imitation firearm, and (2) commission of a crime of violence as enumerated by the statute (not limited to assault with a dangerous weapon), while in possession of the firearm. D.C.Code § 22-3204(b). To convict a person of possession of a firearm during commission of a violent offense, the government must show possession of a firearm, while to convict of assault with a dangerous weapon, the government must show that a weapon—any dangerous weapon—was used to commit an assault.

Not only does each offense require proof of an element that the other does not, each offense addresses a distinct societal interest. *See Bridgeford v. United States,* 411 A.2d 633, 635 (D.C.1980) (no merger where two criminal statutes protect different societal interests). In creating the offense of possession of a firearm during a crime of violence, the Council focused on the concern that firearms were increasingly involved in murders and assault. *See* Report at 2. By contrast, assault with a dangerous weapon focuses on punishing those who assault others with any kind of a dangerous weapon. *Cf. Sousa v. United States,* 400 A.2d 1036, 1044 (D.C.) (D.C.Code § 22-502 concerns itself with danger of weapon used without regard to whether it was specifically intended to inflict injury), *cert. denied,* 444 U.S. 981, 100 S.Ct. 484, 485, 62 L.Ed.2d 408 (1979).

For these reasons, we hold that an offense under § 22-502 does not merge into an offense under § 22-3204(b). *Cf. Jones v. United States,* 516 A.2d 929 (D.C.1987) (§ 22-3202(a) does not merge with § 22-3214).

Appellant's reliance on *Whalen v. United States,* 445 U.S. 684, 100 S.Ct. 1432, 63 L.Ed.2d 715 (1980), is misplaced.[5] In *Whal-*

---

**5.** Appellant's reliance on *Simpson v. United States,* 435 U.S. 6, 98 S.Ct. 909, 55 L.Ed.2d 70 (1978), and *Busic v. United States,* 446 U.S. 398, 100 S.Ct. 1747, 64 L.Ed.2d 381 (1980), is also

*en,* the Supreme Court held, applying the *Blockburger* test, that a conviction for rape merged with a conviction for felony murder for which the underlying felony was the same rape. 445 U.S. at 693–94, 100 S.Ct. at 1438–39. Proof of one criminal offense required proof of every element of the other offense: "proof of rape is a necessary element of proof of the felony murder." *Id.* at 694, 100 S.Ct. at 1439. The *Whalen* Court explained that felony murder was a compound offense and requires proof of all of the elements of the underlying offense. *Id.* The same cannot be said of possession of a firearm during the commission of a crime of violence and assault with a dangerous weapon. Although there may be factual circumstances in which proof of the former could encompass proof of the latter, the factual circumstances underlying the offense are not relevant to a determination of whether the offenses merge. *See Byrd, supra,* at 389 n. 5. The statute creating the offense of possession of a firearm during the commission of a violent crime does not enumerate predicate offenses which the legislature can be said to have viewed as lesser included offenses.

*Affirmed.*

misplaced. In those cases the Court concluded that the clear legislative intent indicated that the legislature had intended only one conviction should arise out of the violations charged. In the instant case, the court is presented with a very different record of legislative history.